IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TENON & GROOVE, LLC and
OPTIONTOWN LLC,

        Plaintiffs,

  v.

PLUSGRADE S.E.C., a/k/a PLUSGRADE
L.P. and PLUSGRADE U.S. LLC,

        Defendants.

Civil Action _____

JURY TRIAL DEMANDED

## ORIGINAL COMPLAINT

This is an action for patent infringement in which Plaintiffs, Tenon & Groove, LLC and

Optiontown LLC (collectively, "Optiontown") make the following allegations against

Defendants, Plusgrade S.E.C., a/k/a/ Plusgrade L.P., and Plusgrade U.S. LLC (collectively

"Plusgrade" or the "Plusgrade defendants").

## PARTIES

1.     Plaintiff Tenon & Groove is a Massachusetts corporation with its principal place

of business at 1416 Boston Providence Turnpike, Suite 227, Norwood, Massachusetts.

2.     Plaintiff Optiontown LLC is a Delaware corporation with its principal place of

business at 1416 Boston Providence Turnpike, Suite 227, Norwood, Massachusetts.

3.     On information and belief, Defendant Plusgrade U.S. LLC is a Delaware

corporation with its corporate headquarters and principal place of business at 35 West 36th Street,

Suite 9W, New York, NY 10018.  Plusgrade U.S. LLC may be served process via its registered

agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street,

Wilmington, DE 19801.

4.    On information and belief, Defendant Plusgrade S.E.C., a/k/a Plusgrade L.P., is a Canadian corporation with its principal place of business at 2000 Claremont Ave. #407, Montreal (Quebec) QC H3Z 2P8, Canada.  Plusgrade S.E.C. may be served as a Canadian corporation under the applicable provisions of the Hague Convention on Service Abroad, which Canada has signed.

## JURISDICTION AND VENUE

5.    This action arises under the patent laws of the United States, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.    This Court has personal jurisdiction over Plusgrade S.E.C. and Plusgrade U.S. LLC.  The Plusgrade defendants have conducted extensive commercial activities and continue to conduct extensive commercial activities within the State of Delaware.  Plusgrade U.S. LLC is incorporated to conduct business within the State of Delaware.  The Plusgrade defendants, directly and/or through intermediaries or affiliates (including Plusgrade entities, subsidiaries, distributors, sales agents, and others), offers for sale, sells, and/or advertises its products (including, but not limited to, the products that are accused of infringement in this lawsuit) in the United States, the State of Delaware, and this Judicial District.  The word "products" as used herein also includes "services" and both may be used interchangeably in this Complaint.  The Plusgrade defendants (directly and/or through intermediaries or affiliates, including other Plusgrade entities, subsidiaries, distributors, sales agents, and others) have purposefully and voluntarily placed one or more of its products (including, but not limited to, the products that are accused of infringement in this lawsuit), as described below in Counts I through V, into the stream of commerce with the expectation that they will be purchased by customers in the District of Delaware.  Accordingly, the Plusgrade defendants have committed the tort of patent infringement within the State of Delaware, as alleged in more detail below.

7.      Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(b).

## THE PATENTS-IN-SUIT

## United States Patent No. 7,418,409 ("the '409 Patent")

8.      United States Patent No. 7,418,409 ("the '409 Patent"), entitled "System for Concurrent Optimization of Business Economics and Customer Value Satisfaction," was duly and legally issued by the United States Patent & Trademark Office to inventor Sachin Goel on August 26, 2008, after a full and fair examination.  Mr. Goel assigned the '409 Patent to Plaintiff Tenon & Groove.  A true and correct copy of the '409 Patent is attached to this Complaint as Exhibit A.

9.      Plaintiff Tenon & Groove is the owner of the entire right, title, and interest in and to the '409 Patent by assignment, and has the exclusive right to sue for infringement and recover damages for all past, present and future infringement.

10.     Plaintiff Optiontown is an exclusive licensee to the '409 Patent and has exclusive rights to sue for infringement and recover damages for all past, present and future infringement in the field of the airline industry.

11.     The '409 Patent discloses and claims novel methods and systems for computerized applications for the concurrent optimization of value in various types of transactions between airlines and their passengers, including, but not limited to, the optimization of revenue management as a result of specific transactions wherein the passenger accepts an offer by the airline for an upgrade option on purchased airline tickets.  By way of example only, Claims 2 and 30 recite certain inventions disclosed in Optiontown's '409 Patent:

(2)     A computer-implemented method for concurrent optimization of value in a transaction between at least two entities, comprising:

(a)      providing a data store containing data representing, with respect to at least one product, at least one option offered by a first of said entities;

(b)      operating a server with which a second of said entities may interact for at least said option;

(c)      operating a server to receive inputs for at least said option and to search the data store for eligibility of products for at least said option;

(d)      displaying the search results; receiving at least one decision of the second entity about the acceptance of at least one of said search results comprising acceptance of an option offered by said first entity;

(e)      receiving at least one decision of the second entity about the acceptance of at least one of said search results comprising acceptance of an option offered by said first entity; and

(f)      operating an event optimizer system to receive data at least pertaining to said acceptance, and in response to the occurrence of at least one event selected from a set of multiple predetermined potential events, execute a corresponding event specific response algorithm; wherein at least one of the servers or the event optimizer system concurrently optimizes a value for at least two entities and determines how the first party will satisfy the accepted option.

(30)   The method of claim 2 wherein said transaction relates to a transaction in the airline industry, said option is a conditional option to get an upgrade whereby imposing a payment obligation on said second entity on occurrence of an event, and said event relates to awarding said upgrade to said second entity.

### United States Patent No. 8,145,536 ("the '536 Patent")

12.   United States Patent No. 8,145,536 ("the '536 Patent"), entitled "System for Concurrent Optimization of Business Economics and Customer Value," was duly and legally issued by the United States Patent & Trademark Office to inventor Sachin Goel on March 27, 2012, after a full and fair examination.  Mr. Goel assigned the '536 Patent to Plaintiff Tenon & Groove.  A true and correct copy of the '536 Patent is attached to this Complaint as Exhibit B.

13.     Plaintiff Tenon & Groove is the owner of the entire right, title, and interest in and to the '536 Patent by assignment, and has the exclusive right to sue for infringement and recover damages for all past, present and future infringement.

14.     Plaintiff Optiontown is an exclusive licensee to the '536 Patent and has exclusive rights to sue for infringement and recover damages for all past, present and future infringement in the field of the airline industry.

15.     The '536 Patent discloses and claims novel methods and systems for computerized applications for, among other things, revenue generation from transactions based on conditional upgrade options for products. By way of example only, Claims 3, 18, 19 and 21 recite certain inventions disclosed in Optiontown's '536 Patent:

(3)     A computer-implemented method to provide options on products, comprising:

(a)     operating a computer system to receive at least on input from a customer defining a request for an option for an upgrade for a product;

(b)     operating a computer system to provide to a customer an option for a product upgrade upon occurrence of specified conditions accepted by the customer and further on condition that the customer relinquish at least one right and a company has the right to enforce said relinquishment upon occurrence of the specified conditions and to provide the upgrade;

(c)     recording in a computer readable data store the option, the specified conditions and relinquishment terms;

(d)     operating a computer system to process the information in the computer readable data store and automatically provide the upgrade to the customer when conditions on the upgrade opportunity are satisfied; and

(e)     recording the provision of the upgrade in a computer readable data store.

(18)    The method of claim 3 wherein said company is an airline.

(19)    The method of claim 18 wherein said product is the ticket of an airline and said relinquishment includes relinquishment of at least one facility associated with said ticket.

(21)     The method of claim 3 wherein the specified conditions accepted by the customer include an indication of price the customer will pay for said options.


## FACTUAL BACKGROUND

### Optiontown Invents and Develops Pioneering Travel Options for Post-Purchase Revenue Management

16.     Mr. Sachin Goel is the inventor of the '409 Patent and the '536 Patent.  In 1998, Mr. Goel earned a degree in Chemical Engineering with honors from the Indian Institute of Technology.  In 2001, he earned a master's degree in Logistics from the Massachusetts Institute of Technology ("MIT").  Mr. Goel is the founder and CEO of Optiontown.  During his time at MIT, Mr. Goel focused his research on mass collaboration and concurrent optimization and developed many scientific algorithmic models to achieve concurrent optimization.  Mr. Goel continued his research and development work for two years after graduating from MIT and continued to work on his key inventions.  His theory of concurrent optimization is a landmark achievement that has developed a new science.  This new science promises a huge potential benefit to several industries, including, but not limited to, airlines, hotels, rail, car rental, sports and events, car sales, real estate, computer manufacturing and many others.

17.     MIT inculcates a spirit of entrepreneurship and facilitates its students and alumni to start and develop new companies based on next generation technologies. Mr. Goel decided to take his inventions to the market by starting a new company, Tenon & Groove LLC, in April 2003.  Tenon & Groove has done business using the trade name "Optiontown," and Mr. Goel is also the founder of Tenon & Groove's exclusive licensee, Optiontown LLC.

18.     Shortly after receiving his master's degree from MIT, in 2003 Mr. Goel founded his new company to develop unique travel options that concurrently optimize value for both travelers and travel-related providers of products and services.  (As noted previously, the word

6

"products" as used herein includes "services" and both may be used interchangeably in this Complaint).  Optiontown is a pioneer in the field of such travel options, and it has invested years of time and substantial resources developing its ground-breaking portfolio of concurrent optimization products and technologies for travel-related industries, particularly for airlines.  Mr. Goel created Optiontown after extensive research at MIT's Center for Transportation Studies.  Based on Mr. Goel's work, Optiontown became the first company in the world dedicated to offering airline customers optimization products and services for post-purchase revenue management.

19.     Optiontown's product portfolio includes next generation products such as:  (1) the Upgrade Travel option program ("UTo"; pronounced *you too*), (2) the Empty Seat option program ("ESo", pronounced *esso*), and (3) the Flexibility Reward option program ("FRo").  The infringing Plusgrade products at issue in this lawsuit compete with Optiontown's "Upgrade Travel option" program, or UTo.

20.     Optiontown's UTo program provides airlines with systems and methods for optimizing the use of premium class cabins by providing travelers with a conditional option to pay for an upgrade to a higher class cabin.  In this way, UTo generates additional revenue and other value for the airline on a seat that would either be given away or fly empty.

21.     In addition to marketing UTo as a stand-alone product, Optiontown markets its portfolio of products – including UTo, ESo and FRo – together, as a suite, because there are synergistic advantages for an airline when it makes available to customers a portfolio of option programs together.  Optiontown's ESo program offers travelers an option to pay for the chance to get an empty seat or seats assigned to an immediately adjacent seat or seats for much less than full fare tickets.  Finally, Optiontown's FRo program allows travelers to earn cash rewards for

their travel flexibility.  The synergistic effect results from ways these options can be, from the airline's perspective, complementary.

22.     Optiontown has invested and continues to invest enormous resources to secure intellectual property protection for its brand, its research and development investment, and for its innovative products and technology.  For example, between 2003 and 2007, Optiontown filed several patent applications in the United States and all over the world seeking to protect its investment in the development of its innovative technologies.  Notably, all six of Optiontown's non-provisional United States patent applications filed between 2003 and 2007 ultimately issued as U.S. patents.  Further, Optiontown filed additional U.S. patent applications that are pending, including applications that have received a Notice of Allowance from the USPTO.

23.     After more than five years of research and intellectual property and product development, in May 2009, Optiontown signed up Kingfisher Airline ("Kingfisher") as its first airline customer for the Upgrade Travel option program (UTo).  As a result, Optiontown became the first company in the world to provide an airline with an Upgrade Travel option program for post-sale revenue generation.  One month later, Optiontown launched its second UTo program on behalf of Scandinavian Airlines ("SAS").  In addition to Kingfisher and SAS, Optiontown currently serves several other airline customers, including AirAsia, AeroMexico, Corsair, Cyprus Airways, Blue1, airBaltic and Air India.

24.     The two Optiontown website screenshots on the following page show and explain how Optiontown's patented UTo products are utilized (with red boxes added for emphasis):



(https://www.optiontown.com/jsp/MTP/MTP_What_is_UTO.jsp; last visited 9/7/2012)



(https://www.optiontown.com/Worldwide_Sites.do;jsessionid=D0043C83A319C7CE0F77D1ED
153CC234; last visited 9/7/2012)

**Plusgrade Enters the Market with a Product that Competes with Optiontown's UTo Program and Infringes the Patents-in-Suit**

25.     Around the time Optiontown went live with its first UTo program customers in the spring of 2009, Mr. Ken Harris founded Defendant Plusgrade, with headquarters in New York City.  Plusgrade offers airline customers the "Plusgrade Platform" and "OneUp" systems, methods, and services, which – like Optiontown's UTo program – are designed to enable airlines the ability to offer travelers the conditional option to pay to upgrade their ticket from economy, if certain conditions occur before the time of departure.  In essence, Plusgrade is attempting to build a business with a single-product offering that directly competes with one of Optiontown's patented portfolio of products – the Upgrade Travel option.

26.     On information and belief, the market for third-party providers of optimized upgrade option programs for airlines is a two-supplier market.  Plusgrade is Optiontown's only competitor in the market for providing airlines and their customers with a third-party platform and service for post-sale revenue generation from optimized upgrade options.  Because Optiontown and Plusgrade are the only two companies in the market, they have competed and continue to compete head-to-head for the business of airlines that desire to implement an optimized upgrade option program made, sold, and/or operated by a third-party provider.

27.     To date, Plusgrade has made, offered to sell, and sold systems and methods for upgrade options that infringe Optiontown's '409  and '536 Patents to a number of airlines. According to Plusgrade's website, at least seven airlines use the accused "Plusgrade Platform" and/or Plusgrade's "OneUp" products and services, including:  Air New Zealand, Virgin Atlantic, Etihad Airways, Czech Airlines, El Al, TAP Portugal and Brussels Airlines.

28.     Optiontown presented its UTo product (among other products) to each of the airlines identified in paragraph 27, and on information and belief, those airlines selected

Plusgrade based, at least in part, on Plusgrade's price competition that was below Optiontown's UTo price.

29.     On information and belief, Plusgrade has offered to sell and sold its infringing product to other airlines that have yet to go live, including airBaltic and Estonian Air.  With respect to each of the aforementioned airline customers, Optiontown was also in negotiations to sell its UTo product or renew its contract for the UTo product, and competed head-to-head with Plusgrade for the business.  Plusgrade prevailed, at least in part, based on Plusgrade's offer to sell its infringing product for a price below Optiontown's UTo price.

30.     Plusgrade's founding in 2009 came more than five years **after** Optiontown filed its first provisional patent application in 2003 (which matured into the '409 Patent), and two years **after** Optiontown filed its patent application that became the '536 Patent.  Notably, Plusgrade was also created **after** the USPTO issued Optiontown's '409 Patent in August 2008.

31.     On information and belief, Plusgrade knows that its only competition in the market for its Plusgrade Platform and OneUp products and services is Optiontown's patented UTo program.

32.     Plusgrade advertises its products as "patented."  On information and belief, Plusgrade intends and believes that advertising its own products as "patented" could provide Plusgrade with a competitive market advantage – and/or neutralize a competitive market disadvantage.

33.     The allegations in paragraph 32 are supported by the fact that Plusgrade's website advertisement specifically states twice (see red boxes in two screenshots below) that the core architecture and algorithms of Plusgrade's option upgrade products are "**patented**":



(http://plusgrade.com/; last visited 9/5/2012)



(http://plusgrade.com/; last visited 9/5/2012)

34.     On information and belief, the statement on Plusgrade's website that its core architecture and algorithms are "patented" is knowingly false.  Plusgrade's website does not

identify any patent numbers, and it appears based on publicly available information that the

reason no patent numbers are listed is neither Ken Harris nor Plusgrade itself owns any issued

patents – they have only patent *applications*.  Moreover, the first patent application Ken Harris

or Plusgrade filed was in April 2009 – **more than five years after** Optiontown's 2003 filing of

its first provisional patent application that ultimately issued as the '409 Patent.  After conducting

an extensive search for issued patents worldwide invented by or assigned to Plusgrade

employees or any Plusgrade entity, Optiontown did not find any issued patents.  Instead, the

search revealed the following patent *applications* – all of which were filed more than five years

after the date of Optiontown's invention.  None of these applications have issued as patents:

(a)     U.S. Provisional Patent Application No. 61/166,719, filed by Plusgrade founder
Ken Harris on April 4, 2009;

(b)     U.S. Patent Application No. 12/648,662, filed by Ken Harris on December 29,
2009, entitled "Engine, System and Method For Upselling Perishable Products or
Service Items";

(c)     European Patent Application No. EP20100758125, filed by Ken Harris on March
30, 2010 (and assigned to Plusgrade), entitled "An Engine, System and Method
For Upselling Perishable Products or Service Items";

(d)     PCT Application No. PCT/IB/2010/000926, filed by Ken Harris on March 30,
2010 (and assigned to Plusgrade), entitled "An Engine, System and Method For
Upselling Perishable Products or Service Items"; and

(e)     U.S. Patent Application No. 13/191,116, filed by Plusgrade founder Ken Harris
on July 26, 2011 (and claiming priority, in-part, from Provisional Patent
Application No. 61/166,719 filed on April 4, 2009), entitled "Engine, System and
Method For Maximizing Long-Term Value of Products or Service Items."

35.     Not only have none of the above-listed patent applications issued as patents, on

April 10, 2011, the PCT (Patent Cooperation Treaty) International Searching Authority issued a

preliminary written report on the patentability of the 51 claims in Plusgrade's PCT patent

application, and preliminarily concluded that **none** of Plusgrade's 51 claims disclose a patentable invention.

36.    Plusgrade's patent applications describe and claim systems and methods wherein an airline customer transacts with an airline to, among other things, bid on conditional upgrade options.  Notably, in addition to the evidence available on Plusgrade's website and its airline customer websites, Plusgrade's upgrade options, as disclosed and claimed in its patent applications, infringe one or more claims of Optiontown's earlier-filed '409 and '536 Patents when such systems and methods are made, used, offered for sale or sold in the United States.

## COUNT I

## Infringement of U.S. Patent No. 7,418,409

37.    Optiontown refers to and incorporates herein the allegations of paragraphs 1 through 36.

38.    Plusgrade has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '409 Patent by making, using, selling, and/or offering to sell in the United States certain methods and/or systems disclosed and claimed in the '409 Patent, specifically including the "Plusgrade Platform" and "OneUp" products and services that are described and promoted on Plusgrade's website and its airline customers' websites.[1]  Plusgrade is thus liable for direct infringement of the '409 Patent pursuant to 35 U.S.C. § 271(a).

---

[1] *See e.g.*, www.plusgrade.com; www.airnewzealand.com/oneup;
www.virginatlantic.custhelp.com/app/answers/detail/a_id/658/kw/your%20bid;
www.etihadairways.com/sites/Etihad/global/en/promotions/Pages/upgrade-yourself-mar12.aspx;
www.elal.co.il/ELAL/English/EL_AL_Plus/En_EL_AL_Plus.html;
www.flytap.com/Portugal/en/PlanBook/Book/Plusgrade;
www.lufthansa.com/online/portal/mam/be/program/news/detail?nodeid=1006589702&I=en&cid=1000188 (all last visited Sept. 6, 2012).

39.     The following screenshots from Plusgrade's website, with red boxes added for emphasis, illustrate the similarities between Plusgrade's Platform and Optiontown's UTo program, and also illustrate in part how Plusgrade infringes one or more claims of Optiontown's '409 Patent:



(www.plusgrade.com; last visited 9/7/12)



(www.plusgrade.com; last visited 9/7/12)

40.     The following three screenshots from TAP Portugal's website containing the label "powered by Plusgrade" (with red boxes added for emphasis) further illustrate how an application of Plusgrade's Platform infringes the '409 Patent:



(http://www.flytap.com/Portugal/en/PlanBook/Book/Plusgrade; last visited 9/7/12)



(http://www.flytap.com/Portugal/en/PlanBook/Book/Plusgrade; last visited 9/7/12)



(http://www.flytap.com/Portugal/en/PlanBook/Book/Plusgrade; last visited 9/7/12)

41.     In addition to and/or in the alternative to direct infringement, Plusgrade has also induced and contributed and continues to induce and contribute to its aforementioned airline customers' direct infringement of the '409 Patent by selling, making and/or configuring computer-based applications, systems, and methods that embody the patented inventions or components thereof claimed in Optiontown's '409 Patent.

42.     In particular, on information and belief, Plusgrade actively, knowingly and intentionally induces its airline customers to infringe the patented inventions claimed in the '409 Patent by, among other things, providing technical support, documentation and software and instructing and/or assisting its customers to combine Plusgrade components with other components and computer-based computer hardware to make and/or use infringing computer-based applications, systems, and methods; and by instructing and/or assisting its airline customers on how to use Plusgrade's infringing computer-based applications, systems, and methods.  A significant portion of such technical support, custom demonstrations, and documentation is readily accessed and publicly available through Plusgrade's website at www.plusgrade.com.

43.     Upon information and belief, Plusgrade provides additional non-public technical support and documentation to its customers.  Since at least the date this lawsuit was filed, and on information and belief some earlier time, Plusgrade has known that its systems and components are used by its airline customers in an infringing manner and/or has been and continues to be willfully blind to such infringing use and has acted with the specific intent to encourage and facilitate such infringing use.  Plusgrade is thus liable for inducing its airline customers to infringe the '409 Patent pursuant to 35 U.S.C. § 271(b).

44.     Furthermore, on information and belief, Plusgrade offers to sell and sells (directly or through intermediaries or authorized agents under Plusgrade's control) to customers and potential customers in this Judicial District and elsewhere in the United States, component parts of Optiontown's patent inventions, including, without limitation, software applications, technical support, and website development.  On information and belief, Plusgrade's components are designed to be used with and connected to other interoperable components, which are further intended to enable Plusgrade's airline customers to make and use computer-based applications, systems, and methods that infringe Optiontown's '409 Patent.  Plusgrade's components are specifically adapted for use in computer-based applications, systems, and methods that infringe Optiontown's '409 Patent, and such components constitute material aspects of infringing computer-based applications that are not staple articles or commodities of commerce suitable for substantial non-infringing uses, all of which is known to Plusgrade.  Since at least the time of this lawsuit, and on information and belief some earlier time, Plusgrade has known that its customers have used and continue to use Plusgrade's components in a manner that directly infringes Optiontown's '409 Patent, and/or has been and continues to be willfully blind to its customers' infringing use.  Plusgrade is thus liable for contributory infringement of the '409 Patent pursuant to 35 U.S.C. § 271(c).

45.     In addition, on information and belief, Plusgrade has infringed and is infringing the '409 Patent with knowledge of Optiontown's patent rights, at least from the time of the filing of the present lawsuit, and with knowledge that Plusgrade's accused products infringe the '409 Patent.  Plusgrade's acts of infringement have been and continue to be willful, deliberate, and in reckless disregard of Optiontown's patent rights.

46.     Optiontown has suffered and continues to suffer damages as a result of Plusgrade's direct and indirect infringement of Optiontown's '409 Patent.  Pursuant to 35 U.S.C. § 284, Optiontown is entitled to recover damages from Plusgrade for its infringing acts in an amount subject to proof at trial, but no less than a reasonable royalty.  Optiontown is further entitled to enhanced damages for Defendants' acts of willful patent infringement pursuant to 35 U.S.C. § 284.

47.     Plusgrade's infringement of Optiontown's '409 Patent has damaged and will continue to damage Optiontown, causing irreparable harm for which there is no adequate remedy at law, unless Plusgrade is enjoined by this Court.

## COUNT II

## Infringement of U.S. Patent No. 8,145,536

48.     Optiontown refers to and incorporates herein the allegations of paragraphs 1 through 47.

49.     Plusgrade has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '536 Patent by making, using, selling, and/or offering to sell in the United States certain methods and/or systems disclosed and claimed in the '536 Patent, specifically including the "Plusgrade Platform" and "OneUp" products and services that are described and promoted on Plusgrade's website and its airline customers' websites.[2]  Plusgrade is thus liable for direct infringement of the '536 Patent pursuant to 35 U.S.C. § 271(a).

---

[2] *See e.g.*, www.plusgrade.com; www.airnewzealand.com/oneup;
www.virginatlantic.custhelp.com/app/answers/detail/a_id/658/kw/your%20bid;
www.etihadairways.com/sites/Etihad/global/en/promotions/Pages/upgrade-yourself-mar12.aspx;
www.elal.co.il/ELAL/English/EL_AL_Plus/En_EL_AL_Plus.html;
www.flytap.com/Portugal/en/PlanBook/Book/Plusgrade;

50.     The screenshots from Plusgrade's website appearing at paragraphs 34 and 35 illustrate how Plusgrade's Platform infringes one or more claims of Optiontown's '536 Patent. In addition, the following four screenshots from Plusgrade's airline customers' websites (linked from the Plusgrade website to the websites of Air New Zealand, Czech Airlines, Etihad and Virgin Atlantic) provide a further illustration of how Plusgrade's Platform and OneUp applications, systems, and methods work and reveal how Plusgrade infringes the '536 Patent:



(www.airnewzealand.com/oneup; last visited 9/7/12)



(www.csa.cz/en/portal/online_services/extra_plusgrade.htm; last visited 9/7/12)

---

www.lufthansa.com/online/portal/mam/be/program/news/detail?nodeid=1006589702&I=en&cid=1000188 (all last visited Sept. 6, 2012).



(www.etihadairways.com/sites/Etihad/global/en/promotions/Pages/upgrade-yourself; last visited 9/7/12)



(http://virginatlantic.custhelp.com/app/answers/detail/a_id/658/kw/your%20bid; last visited 9/7/12)

51.     In addition to and/or in the alternative to direct infringement, Plusgrade has induced and contributed and continues to induce and contribute to its aforementioned airline customers' direct infringement of the '536 Patent by selling, making and/or configuring computer-based applications, systems, and methods that embody the patented inventions or components thereof claimed in Optiontown's '536 Patent.

52.     In particular, on information and belief, Plusgrade actively, knowingly and intentionally induces its airline customers to infringe the patented inventions claimed in the '536 Patent by, among other things, providing technical support, documentation and software and instructing and/or assisting its customers to combine Plusgrade components with other components and computer-based computer hardware to make and/or use infringing computer-based applications, systems, and methods; and by instructing and/or assisting its airline customers on how to use Plusgrade's infringing computer-based applications, systems, and methods.  A significant portion of such technical support, custom demonstrations, and documentation is readily accessed and publicly available through Plusgrade's website at www.plusgrade.com.

53.     Upon information and belief, Plusgrade provides additional non-public technical support and documentation to its customers.  Since at least the date this lawsuit was filed, and on information and belief some earlier time, Plusgrade has known that its systems and components are used by its airline customers in an infringing manner and/or has been and continues to be willfully blind to such infringing use and has acted with the specific intent to encourage and facilitate such infringing use.  Plusgrade is thus liable for inducing its airline customers to infringe the '536 Patent pursuant to 35 U.S.C. § 271(b).

54.     Furthermore, on information and belief, Plusgrade offers to sell and sells (directly or through intermediaries or authorized agents under Plusgrade's control) to customers and potential customers in this Judicial District and elsewhere in the United States, component parts of Optiontown's patent inventions, including, without limitation, software applications, technical support, and website development.  On information and belief, Plusgrade's components are designed to be used with and connected to other interoperable components, which are further

intended to enable Plusgrade's airline customers to make and use computer-based applications, systems, and methods that infringe Optiontown's '536 Patent. Plusgrade's components are specifically adapted for use in computer-based applications, systems, and methods that infringe Optiontown's '536 Patent, and such components constitute material aspects of infringing computer-based applications that are not staple articles or commodities of commerce suitable for substantial non-infringing uses, all of which is known to Plusgrade. Since at least the time of this lawsuit, and on information and belief some earlier time, Plusgrade has known that its customers have used and continue to use Plusgrade's components in a manner that directly infringes Optiontown's '536 Patent, and/or has been and continues to be willfully blind to its customers' infringing use. Plusgrade is thus liable for contributory infringement of the '536 Patent pursuant to 35 U.S.C. § 271(c).

55. In addition, on information and belief, Defendants have infringed and are infringing the '536 Patent with knowledge of Optiontown's patent rights at least from the time of the filing of the present lawsuit, and with knowledge that Defendants' accused products infringe the '536 Patent. Defendants' acts of infringement have been and continue to be willful, deliberate, and in reckless disregard of Optiontown's patent rights.

56. Optiontown has suffered and continues to suffer damages as a result of Plusgrade's direct and indirect infringement of Optiontown's '536 Patent. Pursuant to 35 U.S.C. § 284, Optiontown is entitled to recover damages from Plusgrade for its infringing acts in an amount subject to proof at trial, but no less than a reasonable royalty. Optiontown is further entitled to enhanced damages for Defendants' acts of willful patent infringement pursuant to 35 U.S.C. § 284.

57.     Plusgrade's infringement of Optiontown's '536 Patent has damaged and will continue to damage Optiontown, causing irreparable harm for which there is no adequate remedy at law, unless Plusgrade is enjoined by this Court.

## COUNT III

## Lanham Act False Representation

58.     Optiontown refers to and incorporates herein the allegations of paragraphs 1 through 7, and 16 through 36.

59.     Plusgrade has, in commercial advertising and promotion, made false representations in interstate commerce regarding the nature, characteristics or qualities of their products, services and/or commercial activities, in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

60.     In particular, Plusgrade has made and continues to make literally false representations in commercial advertising by stating more than once on its website that its upgrade option applications, systems, and methods are "patented," when in fact Plusgrade does not have any issued patents covering such products and services.  Moreover, because Plusgrade's false statement that its platform and algorithms are patented is being used on Plusgrade's website to promote and sell Plusgrade's infringing products in competition with Optiontown's UTo product, Optiontown has suffered damages and the public and prospective customers wrongly believe that Plusgrade's core architecture and algorithms for its platform are patented.

61.     Plusgrade's false representations in violation of 15 U.S.C. § 1125(a)(1)(B) are intentional and willful and entitle Optiontown, pursuant to 15 U.S.C. § 1117(a), to recover from Plusgrade for damages sustained or Plusgrade's profits in an amount subject to proof at trial.

62.     Plusgrade's false representations in violation of 15 U.S.C. § 1125(a)(1)(B) will continue to damage Optiontown, causing irreparable harm for which there is no adequate remedy at law, unless Plusgrade's false statements are enjoined by this Court.

## COUNT IV

### Violation of Uniform Deceptive Trade Practices Act

63.     Optiontown refers to and incorporates herein the allegations of paragraphs 1 through 7, and 16 through 36.

64.     Plusgrade falsely and publicly claims that the core architecture and algorithms of Plusgrade's Platform and OneUp program are "patented" in violation of the Uniform Deceptive Trade Practices Act, 6 *Del*. *C*. §§ 2531-36.

65.     Plusgrade's false representations that it obtained patents related to its Platform and OneUp program:

(a) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services in violation of 6 *Del*. *C*. § 2532(a)(2);

(b) causes likelihood of confusion or of misunderstanding as to the affiliation, connection or association with, or certification by, another, namely the United States Patent and Trademark Office, in violation of 6 *Del*. *C*. § 2532(a)(3);

(c) wrongfully represents that its goods or services have sponsorship, approval, characteristics, uses, or benefits that they do not have, or that Plusgrade has a sponsorship, approval, status, affiliation, or connection that it does not have in violation of 6 *Del*. *C*. § 2532(a)(5);

(d) wrongfully represents that its goods or services are of a particular standard, quality, or grade in violation of 6 *Del*. *C*. § 2532(a)(7); and

(e) otherwise creates a likelihood of confusion or of misunderstanding in violation of 6 *Del*. *C*. § 2532(a)(12).

66.    Plusgrade's deceptive trade practices have confused and deceived and have a tendency to confuse and deceive members of the public.

67.    Optiontown has been damaged by Plusgrade's deceptive trade practices and is likely to be damaged further by those practices if they continue.

68.    Plusgrade's deceptive trade practices in violation of 6 *Del*. *C*. § 2532(a) are intentional and willful and entitle Optiontown to recover from Plusgrade its attorneys' fees and treble damages.

69.    Plusgrade's deceptive trade practices in violation of 6 *Del*. *C*. § 2532(a) will continue to damage Optiontown, causing irreparable harm for which there is no adequate remedy at law, unless Plusgrade's deceptive trade practices are enjoined by this Court.

## COUNT V

### False Marking

70.    Optiontown refers to and incorporates herein the allegations of paragraphs 1 through 7, and 16 through 36.

71.    Plusgrade has falsely marked and continues to falsely mark the core architecture and algorithms of Plusgrade's Platform and OneUp program as "patented" on its website in violation of 35 U. S. C. § 292, because in fact neither Plusgrade's Platform, nor its OneUp program, are patented.

72.    Plusgrade falsely marked its products and services as "patented" with knowledge that those products and services are not patented, and did so with the purpose of deceiving the public and potential customers into believing that Plusgrade's Platform and OneUp products and services are patented.  Plusgrade has disregarded Section 292 and continues to mark its products

and services as "patented," for the purpose of attempting to influence potential customers to use Plusgrade's products and services based on their novelty and patent protection – a useful message to a company competing in a market where its only rival (Optiontown) has patents covering its competing product offering (UTo).

73.    Plusgrade's false "patented" marking in violation of 35 U.S.C. § 292 has caused and continues to cause Optiontown competitive injury.  Plusgrade and Optiontown are direct competitors and Plusgrade's false patent marking misleads consumers.  Plusgrade and Optiontown vie for the same dollars from the same potential customers, and, as a result, Plusgrade's false marking has the effect of upsetting the relative competitive positions of Optiontown and Plusgrade.  In particular, Plusgrade's false marking causes potential customers to believe that both Plusgrade's upgrade option program is patent-protected, when in fact only Optiontown's UTo program is patented.  Thus, the effect of Plusgrade's false marking is to neutralize Optiontown's comparative market advantage based on patent coverage, and also has the effect of providing (false) comfort to potential Plusgrade customers that Plusgrade's Platform and OneUp programs are patent protected and novel.

## JURY DEMAND

Optiontown hereby requests a trial by jury in Wilmington, Delaware, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiffs Tenon & Groove LLC and Optiontown LLC respectfully request this Court to enter judgment in their favor and against Defendants Plusgrade S.E.C. and Plusgrade U.S. LLC granting the following relief:

A.    Judgment in Plaintiffs' favor on Counts I through V;

B.      Judgment in Plaintiffs' favor that Defendants have infringed and continue to infringe the '409 Patent;

C.      Judgment in Plaintiffs' favor that Defendants have infringed and continue to infringe the '536 Patent;

D.      An award to Plaintiffs of damages adequate to compensate them for Defendants' acts of patent infringement, both directly and/or indirectly, but in no event less than a reasonable royalty, together with interest and costs as fixed by the court pursuant to 35 U.S.C. § 284;

E.      An award to Plaintiffs of enhanced damages, up to and including treble damages, pursuant to 35 U.S.C. § 284, for Defendants' acts of willful patent infringement of both the '409 and '536 Patents;

F.      A grant of permanent injunction, pursuant to 35 U.S.C. § 283, against Defendants, enjoining Defendants from further acts of patent infringement;

G.      An award to Plaintiffs of its costs of suit and reasonable attorneys' fees, pursuant to 35 U.S.C. § 285, due to the exceptional nature of this case;

H.      A grant of permanent injunction, against Defendants, enjoining Defendants from falsely stating that their core architecture and algorithms are "patented";

I.      An award to Plaintiffs of compensatory and enhanced damages, pursuant to 15 U.S.C. § 1117(a), for Defendants' violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B);

J.      An award of Plaintiffs' costs of suit and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) for Defendants' violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B);

K.      A decree that Defendants have falsely marked in violation of 35 U.S. C. § 292;

L.      An award of monetary damages pursuant to 35 U.S.C. § 292, in an amount adequate to compensate Optiontown for its competitive injury;

M.      All costs and fees incurred by Optiontown as a result of the prosecution of the False Marking cause of action;

N.      An award to Plaintiffs of compensatory and treble damages for Defendants' violations of the Uniform Deceptive Trade Practices Act, 6 *Del. C.* §§ 2531-36;

O.      An award of Plaintiffs' costs of suit and reasonable attorneys' fees pursuant to 6 *Del. C.* § 2533(b) for Defendants' violations of the Uniform Deceptive Trade Practices Act, 6 *Del. C.* §§ 2531-36;

P.      A grant of a preliminary and permanent injunction, pursuant to 6 *Del. C.* § 2533(b), against Defendants, enjoining Defendants from further acts of deceptive trade practices;

Q.      Any further relief that this Court deems just and proper.

Date: September 10, 2012

FARNAN LLP

/s/  Brian E. Farnan
Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300 (Telephone)
(302) 777-0301 (Facsimile)

*Counsel for Plaintiffs*
*Tenon & Groove, LLC and Optiontown LLC*

*Of Counsel*:

Paul J. Skiermont
Donald Puckett
Rajkumar Vinnakota
**SKIERMONT PUCKETT LLP**
2200 Ross Avenue, Suite 4301W
Dallas, Texas 75201
(214) 978-6600 (Telephone)
(214) 978-6601 (Facsimile)
paul.skiermont@skiermontpuckett.com
donald.puckett@skiermontpuckett.com
kumar.vinnakota@skiermontpuckett.com