**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

TENON & GROOVE, LLC and )
OPTIONTOWN LLC, )
)
Plaintiffs, )
) C.A. No. 12-1118-GMS-SRF
v. )
)
PLUSGRADE S.E.C. a/k/a PLUSGRADE )
L.P. and PLUSGRADE U.S. LLC, )

**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

Presently before the court in this patent infringement action is the motion for summary

judgment of defendants Plusgrade S.E.C. a/k/a Plusgrade L.P. and Plusgrade U.S. LLC (together,

"Plusgrade"). (D.I. 20)  Plaintiffs Tenon & Groove, LLC and Optiontown (together, "Tenon &

Groove") oppose Plusgrade's motion. (D.I. 24)  For the following reasons, I recommend that the

court grant Plusgrade's motion for summary judgment and dismiss the action.

**II.   BACKGROUND**

Tenon & Groove initiated the present case on September 10, 2012, alleging infringement

of U.S. Patent Nos. 7,418,409 ("the '409 patent") and 8,145,536 ("the '536 patent").  The '409

patent discloses methods for the concurrent optimization of value in various types of transactions

between sellers and buyers, with applications in the context of the airline industry.  The '409

patent contains independent claims 1, 2, and 31.  Claim 2 is a process claim.  Claim 1 requires a

"computer-implemented system" capable of performing the process of claim 2.  The parties

appear to agree that, for purposes of the summary judgment, there are no material differences

between claims 1 and 2. Claim 31 corresponds with the language of claim 2, but recites a

particular application for seat upgrades. Claim 2 is reproduced below:

> A computer-implemented method for concurrent optimization of value in a
> transaction between at least two entities, comprising:
>> a. providing a data store containing data representing, with respect to at
>> least one product, at least one option offered by a first of said entities;
>> b. operating a server with which a second of said entities may interact for
>> at least said option;
>> c. operating a server to receive inputs for at least said option and to search
>> the data store for eligibility of products for at least said option;
>> d. displaying the search results;
>> e. receiving at least one decision of the second entity about the acceptance
>> of at least one of said search results comprising acceptance of an option
>> offered by said first entity; and
>> f. operating an event optimizer system to receive data at least pertaining
>> to said acceptance, and in response to the occurrence of at least one event
>> selected from a set of multiple predetermined potential events, execute a
>> corresponding event specific response algorithm;
> wherein at least one of the servers or the event optimizer system concurrently
> optimizes a value for at least two entities and determines how the first party will
> satisfy the accepted option.

('409 patent, claim 2)

The '536 patent is a continuation-in-part of the '409 patent, and discloses computerized

applications for generating revenue based on conditional options for products, particularly in the

context of the airline industry. The '536 patent contains independent claims 1 and 3. Claim 3 is

a process claim. Claim 1 requires a "computer-implemented system" capable of performing the

process of claim 3. The parties agree that, for purposes of summary judgment, there are no

material differences between claims 1 and 3. Claim 3 is reproduced below:

> A computer-implemented method to provide options on products, comprising:
>> a. operating a computer system to receive at least on [sic] input from a
>> customer defining a request for an option for an upgrade for a product;
>> b. operating a computer system to provide to a customer an option for a
>> product upgrade upon occurrence of specified conditions accepted by the
>> customer and further on condition that the customer relinquish at least one

2

right and a company has the right to enforce said relinquishment upon
occurrence of the specified conditions and to provide the upgrade;
c. recording in a computer readable data store the option, the specified
conditions and relinquishment terms;
d. operating a computer system to process the information in the
computer readable data store and automatically provide the upgrade to the
customer when conditions on the upgrade opportunity are satisfied; and
e. recording the provision of the upgrade in a computer readable data
source.

('536 patent, claim 3)

Tenon & Groove accuses Plusgrade's computerized "Plusgrade Platform" and "One-Up"
systems of infringing certain claims in the asserted patents by making, selling, using, or offering
to sell the accused systems to airline customers that offer upgrade options to ticketed airline
customers. (D.I. 1 at ¶¶ 14-24) Specifically, Tenon & Groove alleges that Plusgrade's accused
systems infringe claims 1-2, 4, 6-7, 10-11, 14-16, 22, 26, and 30 of the '409 patent, and claims 1,
3, 5, 9, 12, 14, 18-19, and 21-22 of the '536 patent.

## III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a
dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury
to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.
2011) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986)). Pursuant to Rule
56(c)(1), a party asserting that a fact is genuinely disputed must support its contention either by
citing to "particular parts of materials in the record, including depositions, documents,
electronically stored information, affidavits or declarations, stipulations (including those made
for the purposes of the motion only), admissions, interrogatory answers, or other materials," or

3

by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460–61 (3d Cir.1989). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris,* 550 U.S. 372, 380 (2007); *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007). However, the existence of some evidence in support of the nonmoving party may not be sufficient to deny a motion for summary judgment. Rather, there must be enough evidence to enable a jury reasonably to find for the nonmoving party on the issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. at 322.

## IV. DISCUSSION

By way of its motion for summary judgment, Plusgrade alleges that the '409 patent and the '536 patent are invalid because they fail to meet the subject matter eligibility requirements of 35 U.S.C. § 101. (D.I. 21) The court analyzes § 101 issues in view of the well-established principle that all issued patent claims receive a statutory presumption of validity. *See* 35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. P'ship,* 131 S. Ct. 2238 (2011). The standard of proof to

establish the invalidity of a patent is clear and convincing evidence. *See WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999). "Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is a threshold inquiry to be determined as a matter of law in establishing the validity of a patent." *Cloud Satchel, LLC v. Amazon.com, Inc.*, --- F. Supp. 3d ----, 2014 WL 7227942, at *3 (D. Del. Dec. 18, 2014) (citing *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1277 (Fed. Cir. 2013), *aff'd, Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, --- U.S. ----, 134 S. Ct. 2347, 189 L. Ed. 2d 296 (2014); *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008)).

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title." 35 U.S.C. § 101. There are three judicially created exceptions to the four statutory categories of patent eligibility set forth in § 101 – "laws of nature, physical phenomena, and abstract ideas."[1] *Bilski v. Kappos*, 561 U.S. 593, 594 (2010); *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). A claim directed to one of these exceptions is not eligible for patent protection because "they are the basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)); *see also Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013). The Supreme Court has recognized that too broad an interpretation of this exclusionary principle could eviscerate patent law because "all

---

[1] The parties do not dispute that the patents at issue in the present litigation are directed to machines and processes pursuant to § 101, and Plusgrade's motion for summary judgment addresses only the abstract ideas exception to the statutory categories. (D.I. 21)

inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 132 S. Ct. at 1293; *see also Alice*, 134 S. Ct. at 2354. For this reason, the Supreme Court recognizes that "'an *application* of a law of nature . . . to a known structure or process may well be deserving of patent protection.'" *Mayo*, 132 S. Ct. at 1293-94 (emphasis in original) (quoting *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)).

If the court determines that a patent claims an abstract idea, the court must then look to the rest of the claim to see if there is an "'inventive concept' – *i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1298); *see also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013). "This two-stage inquiry requires examination of claim elements 'both individually and as an ordered combination.'" *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2355). The Supreme Court has held that "[s]imply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (holding that the abstract idea of "intermediated settlement" was a "fundamental economic process" and therefore was not patent-eligible); *see also Bilski*, 561 U.S. at 611 (holding that the patent-ineligible abstract idea of "hedging, or protecting against risk" was a "fundamental economic practice"). Furthermore, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment or adding insignificant postsolution activity." *Bilski*, 561 U.S. at 610-11 (internal quotation marks omitted).

To determine whether a patent claims an abstract idea, courts frequently apply the machine-or-transformation test. *See Bilski*, 561 U.S. 593; *Ultramercial, Inc. v. Hulu, LLC*, 772

F.3d 709, 716 (Fed. Cir. Nov. 14, 2014). The Supreme Court has cautioned, however, that the machine-or-transformation test is not the sole test for patent eligibility. *See id.* Accordingly, courts must also examine the abstract nature of the claims more generally:

> [I]n applying the § 101 exception, [the Court] must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more thereby transforming them into a patent-eligible invention. The former would risk disproportionately tying up the use of the underlying ideas and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws.

*Alice*, 134 S. Ct. at 2354-55; *see also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011). Plusgrade contends that the asserted claims are not patent-eligible because they: (1) fail the machine-or-transformation test; and (2) are more generally directed to an abstract idea. (D.I. 21 at 9-20)

## A.    Machine-or-Transformation[2]

---

[2] Tenon & Groove characterizes the machine-or-transformation test as "outdated" following the Supreme Court's recent decision in *Alice*. (D.I. 56 at 1) Although the Supreme Court did not expressly identify the machine-or-transformation test in its analysis, the second prong of the framework set forth in *Alice* takes into consideration whether a computer transforms an otherwise abstract idea into an inventive concept. *Alice*, 134 S. Ct. at 2357(concluding that generic computer implementation fails to transform an abstract idea into a patent-eligible invention). The Supreme Court did not expressly overrule its prior precedents applying the machine-or-transformation test, nor did the Supreme Court characterize the machine-or-transformation test as "outdated." In light of the arguments presented by the parties on summary judgment, and the Supreme Court's declaration in *Bilski* that the machine-or-transformation test "may be a useful and important clue or investigative tool," the court conducts an analysis applying the machine-or-transformation test in addition to its application of the two-pronged test for patent eligibility set forth in *Alice*. *Bilski*, 561 U.S. at 594; *see also Ultramercial*, 772 F.3d at 716; *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).

Under the machine-or-transformation test, a process claim is patent eligible if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Bilski*, 561 U.S. at 600 (internal citations omitted). The parties do not dispute the transformation prong; therefore, the court's analysis is limited to the machine prong of the test.

"[T]o impart patent-eligibility to an otherwise unpatentable process under the theory that the process is linked to a machine, the use of the machine must impose meaningful limits on the claim's scope." *CyberSource*, 654 F.3d at 1375 (internal quotation marks omitted). The Federal Circuit has stated that a machine will only impose a meaningful limit on the scope of a claim when it plays a significant part in "permitting the claimed method to be performed, rather than function[ing] solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations." *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1333 (Fed. Cir. 2010). A computer is not a significant part of the process if that process can be performed without a computer. *See CyberSource*, 654 F.3d at 1375 ("[M]erely claiming a software implementation of a purely mental process that could otherwise be performed without the use of a computer does not satisfy the machine prong of the machine-or-transformation test.").

The Federal Circuit has explained that, "[t]o salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can.*, 687 F.3d 1266, 1278. *Cf. SiRF Tech.*, 601 F.3d at 1332 (concluding that a GPS receiver was integral to the claims at issue and the machine-or-transformation test was therefore met). Computer components employed for basic functions, such as storage, transmitting and receiving information, only allow an abstract idea to be performed more quickly

and do not impose a meaningful limit on the scope of the claim. *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, C.A. No. 12-1138-SLR, 2014 WL 7149400, at *7 (D. Del. Dec. 15, 2014) (citing *Bancorp*, 687 F.3d at 1278); *see also IPLearn, LLC v. K12 Inc.*, C.A. No. 11-1026-RGA, --- F. Supp. 3d ----, 2014 WL 7206380, at *7 (D. Del. Dec. 17, 2014) ("Merely because calculations are more efficient on a computer is not enough.").

The patents-in-suit do not pass the machine-or-transformation test. Tenon & Groove alleges that Plusgrade has failed to come forward with any evidence showing that a human can perform the steps in the asserted claims. (D.I. 24 at 20) However, the specifications themselves reveal that the processes may be performed mentally by a human, expressly stating that the inventions "eliminate[] manual, time-consuming processes and replace[] those with an efficient, automatic process." [3] ('409 patent at col. 25:29-30; '536 patent at col. 45:61-62) The Federal Circuit has stressed that "[m]erely using a computer to perform more efficiently what could otherwise be accomplished manually does not confer patent-eligibility." *See buySAFE, Inc. v.*

---

[3] The declaration of Tenon & Groove's expert, Dr. Barry Smith, Ph.D. (the "Smith Declaration"), is insufficient to overcome the intrinsic evidence in the specifications. (D.I. 24 at 20; D.I. 25, Ex. 1) The Smith Declaration explains that the claimed processes cannot be performed mentally due to the complexity of the calculations, the high volume of data, and the speed with which the calculations must be performed. (D.I. 25, Ex. 1 at ¶¶ 27-33) These assertions are not persuasive. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Assoc.*, --- F.3d ----, 2014 WL 7272219, at *3 (Fed. Cir. Dec. 23, 2014) (rejecting an argument that the use of a scanner in addition to a generic computer is not drawn to an abstract idea merely because human minds are unable to process and recognize the information). The Smith Declaration generically characterizes the calculations as complex without identifying any particular calculation incapable of being performed by a human. (*Id.*) Moreover, although the Smith Declaration attempts to challenge portions of the specification cited by Plusgrade, it notably fails to address the portion of the specifications explaining that the inventions "eliminate[] manual, time consuming processes." Tenon & Groove cites no authority that would compel the court to credit the Smith Declaration over the specifications of the patents-in-suit.

*Google, Inc.*, 964 F. Supp. 2d 331, 336 (D. Del. 2013) (citing *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can.*, 687 F.3d 1266, 1279 (Fed. Cir. 2012)), *aff'd*, 765 F.3d 1350 (Fed. Cir. 2014). The specifications provide that achieving an optimal upgrade for customers and the airline, which is a primary purpose of the invention, requires the use of human judgment. ('409 patent at col. 10:6-7; '536 patent at col. 29:63-64) The Federal Circuit has held that "the patent statute does not allow patents on particular systems that depend for their operation on human intelligence alone." *In re Comiskey*, 554 F.3d 967, 980 (Fed. Cir. 2009); *see also IPLearn*, 2014 WL 7206380, at *5 (concluding that the patent-in-suit described an unpatentable abstract idea because the Background section identified educational practices that were "decades" old and stated that "[t]he present invention relates generally to learning and more particularly to using a computer to enhance learning.").

The specifications also indicate that the collection of customer preference information may be performed over the Internet,[4] but note that "other communication media may be used, as well, for all or part of the system or steps. For example, customer information may be taken over the phone or in person or via any other means. And a sale can similarly be completed by telephone or in person." ('409 patent, col. 3:47-51; '536 patent, col. 5:8-12) Data-gathering steps alone cannot bring a claim into compliance with § 101, because humans have historically

---

[4] The Federal Circuit has suggested that the Internet's status as a "machine" for purposes of the machine-or-transformation test is highly questionable. *See Ultramercial*, 772 F.3d at 716 ("[T]he Internet is not sufficient to save the patent under the machine prong of the machine-or-transformation test. It is an ubiquitous information-transmitting medium, not a novel machine."); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011); *see also buySAFE*, 964 F. Supp. 2d at 335. To qualify as an "inventive concept" under *Alice*, the patent must "specify how interactions with the Internet are manipulated to yield a desired result . . ." *DDR Holdings, LLC v. Hotels.com, L.P.*, --- F.3d ----, 2014 WL 6845152, at *12 (Fed. Cir. Dec. 5, 2014).

gathered and stored data mentally or with pen and paper. *See In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989); *see also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 800 F. Supp. 2d 613, 619 (D. Del. 2011) (holding that claims which are directed to concepts for organizing data fail the machine-or-transformation test).

Nor do the patents-in-suit become patent-eligible because they recite a general purpose computer. The '409 patent recites a "data store," an "output device," an "optimizer system," and "servers," which are employed for basic computer functions such as receiving, storing, and outputting data, and performing calculations. ('409 patent, col. 37:38 – 38:13; 39:26 – 40:25) The '536 patent similarly recites a "computer system," a "data store," and "data processors" used to receive inputs, process information, provide customer options, and record data. ('536 patent, col. 226:36 – 227:6) These patent claims "implicate the use of a machine, but a machine does not impose any limit on the claimed methods themselves." *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 691 F. Supp. 2d 577, 596-97 (D. Del. 2010) (concluding that terms such as data processing system, searchable claim database, and storage means "do not imply a specific computer having any particular programming – they are descriptive of a general computer system at best."); *see also DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (noting that patent-in-suit failed to specify how the computer hardware and database were "specifically programmed" to perform the claimed steps); *Joao Bock*, 2014 WL 7149400, at *7 ("The computer components are being employed for basic functions, including storage, transmitting and receiving information, and, the court concludes that such components are not 'specific' or 'special purpose' computers."). The concept of applying a series of conditions for purposes of optimizing a transaction is well-known, and implementing this concept with the

generalized computer recited in the patents-in-suit is insufficient to establish patent eligibility. For these reasons, the '409 and '536 patents fail the machine-or-transformation test.

## B.     Abstract Idea

The Supreme Court has cautioned that the machine-or-transformation test is not dispositive in a § 101 inquiry. *Bilski*, 561 U.S. at 603. Therefore, the court proceeds to examine more generally the abstract nature of the claims. *See CyberSource*, 654 F.3d at 1371. To distinguish "patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts," the court must first determine whether the claims are drawn to a patent-ineligible concept. *Alice*, 134 S. Ct. at 2355. If so, the court must then search for an "inventive concept," taking into consideration the "elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1297).

Applying the framework set forth in *Alice*, it is apparent that the claims of the patents-in-suit are drawn to unpatentable subject matter. With respect to the first step of the analysis, the '409 and '536 patents are directed to the unpatentable fundamental concept of using a computer to facilitate negotiations between an airline and its customer that results in a contract for a product upgrade.[5] The specifications state that the inventions "eliminate[] manual, time-

---

[5] The patent at issue in the present case is distinguishable from the patent addressed in the Federal Circuit's recent ruling in *DDR Holdings, LLC v. Hotels.com, L.P.*, --- F.3d ----, 2014 WL 6845152, at *10 (Fed. Cir. Dec. 5, 2014). Specifically, the Federal Circuit concluded that the patent in *DDR Holdings* was directed to addressing a business challenge particular to the Internet, namely, retaining website visitors. The Federal Circuit expressly noted that the claims "do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is

consuming processes and replace[] those with an efficient, automatic process." ('409 patent at col. 25:29-30; '536 patent at col. 45:61-62) However, "neither the limitation nor anything in the specification provides any detail as to how that function is performed." *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, --- F. Supp. 2d ----, 2014 WL 4364848, at *7 (E.D. Tex. Sept. 3, 2014) (holding that two patents directed to the conversion of loyalty award points of one vendor into loyalty award points of another vendor were not patentable under section 101). Moreover, Tenon & Groove's letter submission dated July 11, 2014 states that "the Asserted Claims are directed toward improvements on computer systems and processes to optimize revenue generation based on interactions between air carriers and their customers that result in conditional agreements . . ." which means implementing on a generic computer the abstract concept of optimizing transactions based on certain conditions. (D.I. 54 at 2-3)

The concept of using a computer to "optimize revenue generation based on interactions between air carriers and their customers based on their relative perception of value regarding certain product enhancement options that are based on and dictated by unknown future events," has no concrete or tangible form. (D.I. 54 at 2-3); *See Ultramercial*, 772 F.3d at 715 (concluding that certain additional limitations added a degree of particularity, but the concept described by the majority of the limitations described only an abstract idea of showing an advertisement before delivering free content). Although certain dependent claims restrict the field of use to the airline industry, this limitation is insufficient to establish patent eligibility under § 101. *See*

---

necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* In the present case, the recited use of a computer to facilitate negotiations between an airline and its customer, resulting in a contract for a product upgrade, is a fundamental economic or longstanding commercial practice that is not unique to the Internet, and the specification explicitly provides that the claimed processes can be performed manually. ('409 patent at col. 25:29-30; '536 patent at col. 45:61-62)

*Parker v. Flook*, 437 U.S. 584, 589-90 (1978) (limiting an abstract idea to one field of use or adding token postsolution components does not make a concept patentable).

At the second step of the analysis, the court considers whether the '409 and '536 patents embody an inventive concept. An airline's capacity to track variables, including the preferences of multiple passengers, flight availability, and the perceived value for an upgrade option, is not an inventive concept. Like the risk hedging in *Bilski*, and the concept of intermediated settlement in *Alice*, the concept of using a computer to optimize negotiations between an airline and its customer, to each obtain the best economic results given certain conditions, is "a fundamental economic practice long prevalent in our system of commerce." *Alice*, 134 S. Ct. at 2356 (internal quotation marks omitted); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Assoc.*, --- F.3d ----, 2014 WL 7272219, at *3 (Fed. Cir. Dec. 23, 2014) (concluding that the concept of collecting data, recognizing certain data within the collected data set, and storing the recognized data in a memory was well-known); *buySAFE*, 765 F.3d at 1354-55 ("The claims in this case do not push or even test the boundaries of the Supreme Court precedents under section 101. The claims are squarely about creating a contractual relationship – a 'transaction performance guaranty' – that is beyond question of ancient lineage.").

Moreover, the claimed concept is not directed to any specific device or system, nor is it limited to a concrete application. *See buySAFE*, 964 F. Supp. 2d at 337, *aff'd*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("The claims' invocation of computers adds no inventive concept. The computer functionality is generic – indeed, quite limited . . . That a computer receives and sends the information over a network – with no further specification – is not even arguably inventive."). As instructed by the Federal Circuit in *DDR Holdings*, (1) "recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible; (2)

"mathematical algorithms, including those executed on a generic computer, are abstract ideas;" (3) "some fundamental economic and conventional business practices are also abstract ideas;" and (4) general use of the Internet "to perform an abstract business practice (with insignificant added activity)" does not pass muster under § 101. *DDR Holdings*, 2014 WL 6845152, at **9, 12. The computers recited in the patents-in-suit do not "play a significant part in permitting the claimed method to be performed." *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) (internal quotations omitted). As previously stated at § IV.A, *supra*, the claims recite only a general purpose computer performing "purely conventional" functions. *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1298). "Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Id.* at 2358 (quoting *Mayo*, 132 S. Ct. at 1297).

The '409 patent recites a "data store," an "output device," an "optimizer system," and "servers," which are employed for basic computer functions such as receiving, storing, and outputting data, and performing calculations. ('409 patent, col. 37:38 – 38:13; 39:26 – 40:25) The '536 patent similarly recites a "computer system," a "data store," and "data processors" used to receive inputs, process information, provide customer options, and record data. ('536 patent, col. 226:36 – 227:6) However, the recitation of specific hardware elements is insufficient to confer specificity. *See Alice*, 134 S. Ct. at 2360 (concluding that the recitation of "specific hardware" consisting of a "data processing system," a "communications controller," and a "data storage unit" were "purely functional and generic."); *see also Cloud Satchel*, 2014 WL 7227942, at *8; *Content Extraction & Transmission*, 2014 WL 7272219, at *4 (holding that the use of existing scanning and processing technology did not transform the claims into a patent-eligible

application). "Nothing in the claims purports to improve the functioning of the computer itself, and the computer components of the claims add nothing that is not already present in the steps of the claimed methods, other than the speed and convenience of basic computer functions such as calculation, communication, and the display of information." *Loyalty Conversion*, 2014 WL 4364848, at \*9 (citing *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012)).

In light of the foregoing authorities, it is not necessary for the court to give weight to the parties' submissions regarding the status of Tenon & Groove's continuation applications before the United States Patent & Trademark Office. (D.I. 58; D.I. 59)  For these reasons, I recommend that the court grant Plusgrade's motion for summary judgment.

## V.     CONCLUSION

For the foregoing reasons, I recommend that the court grant Plusgrade's motion for summary judgment.  (D.I. 20)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available at

http://www.ded.uscourts.gov/court-info/local-rules-and-orders/general-orders.


Dated:  January 6, 2015

Sherry R. Fallon
United States Magistrate Judge