IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TENON & GROOVE, LLC and OPTIONTOWN LLC, | ) ) ) ) |
| Plaintiffs | ) ) ) |
| v. | ) C.A. No. 12-1118-GMS-SRF ) |
| PLUSGRADE S.E.C. a/k/a PLUSGRADE L.P. and PLUSGRADE U.S. LLC, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM**

**I.   INTRODUCTION**

Pending before the court is the motion for summary judgment filed by defendants Plusgrade S.E.C. and Plusgrade U.S. LLC (collectively, "Plusgrade") on May 3, 2013 (D.I. 20); Magistrate Judge Fallon's Report and Recommendation ("the R&R"), dated January 6, 2015 (D.I. 67); and the Objections filed by plaintiffs Tenon & Groove, LLC and Optiontown LLC (collectively, "the Plaintiffs") on January 23, 2015. (D.I. 68.) For the reasons below, the court will overrule the Plaintiffs' objections and adopt the R&R. Thus, the court will grant Plusgrade's motion for summary judgment. (D.I. 20.)

**II.   OBJECTIONS**

In the R&R, the magistrate judge recommended that the court grant Plusgrade's motion for summary judgment that U.S. Patent Nos. 7,418,409 ("the '409 Patent") and 8,145,536 ("the '536 Patent") (collectively, "patents-in-suit") are invalid under 35 U.S.C. § 101. Magistrate Judge Fallon determined that the patents-in-suit recited patent-ineligible "abstract ideas," relying on the recent U.S. Supreme Court case *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347

(2014), and other § 101 decisions. In particular, the R&R states that the patents-in-suit fail the two-prong approach outlined in *Alice*, and also fail the "machine-or-transformation" test, which remains a "useful and important clue, an investigative tool," in a § 101 analysis. *See Bilski v. Kappos*, 561 U.S. 593, 604 (2010).

### A. <u>The Plaintiffs' Objections</u>

The Plaintiffs argue that the patents-in-suit are not invalid under § 101 and that Magistrate Judge Fallon incorrectly recommended granting summary judgment. Specifically, the Plaintiffs contend that (1) the patented technology is not "abstract," (2) there are no preemption concerns attendant in the claims, and (3) even if the patents were directed to a patent-ineligible concept, the claims offer sufficient inventive contributions to render them patentable. (D.I. 68 at 3–10.)

## III. STANDARD OF REVIEW

The magistrate judge submitted her R&R pursuant to Rule 72(b)(1) of the Federal Rules of Civil Procedure; the pending objections, therefore, are dispositive and the court's review is *de novo*. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3). The court may accept, reject, or modify the recommendations of the magistrate judge. Fed. R. Civ. P. 72(b)(3). The court also may receive further evidence or return the matter to the magistrate judge with instructions for further proceedings. *Id.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). Thus, summary judgment is appropriate only if the moving party shows there are no

genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *Boyle*, 139 F.3d at 393. A fact is material only if it might affect the outcome of the suit. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.*

In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.* In determining the appropriateness of summary judgment, a court must review the record as a whole and "draw all reasonable inferences in favor of the nonmoving party, [but] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The moving party is also entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing or adduce evidence on an essential element of its case for which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

After having reviewed the record in this case, the R&R, the parties' submissions, and the applicable law, the court finds that Magistrate Judge Fallon's conclusions of law were proper. The court agrees with and affirms the R&R. Thus, the court grants summary judgment for the Defendants on all asserted claims.

### A. Abstract Idea

In the R&R, Magistrate Judge Fallon—following the framework outlined in *Alice*—found that the patents-in-suit are directed to patent ineligible abstract ideas. *See Alice*, 134 S. Ct. at 2355 ("First, we determine whether the claims at issue are directed to [a] patent-ineligible concept[]."). The court agrees with her assessment.

3

By way of example, Magistrate Judge Fallon identified an illustrative claim from each of the patents-in-suit. Claim 2 of the '409 Patent recites a method for optimizing a transaction between two or more parties:

> A computer-implemented method for concurrent optimization of value in a transaction between at least two entities, comprising:
> a. providing a data store containing data representing, with respect to at least one product, at least one option offered by a first of said entities;
> b. operating a server with which a second of said entities may interact for at least said option;
> c. operating a server to receive inputs for at least said option and to search the data store for eligibility of products for at least said option;
> d. displaying the search results;
> e. receiving at least one decision of the second entity about the acceptance of at least one of said search results comprising acceptance of an option offered by said first entity; and
> f. operating an event optimizer system to receive data at least pertaining to said acceptance, and in response to the occurrence of at least one event selected from a set of multiple predetermined potential events, execute a corresponding event specific response algorithm;
> wherein at least one of the servers or the event optimizer system concurrently optimizes a value for at least two entities and determines how the first party will satisfy the accepted option.

'409 Patent, claim 2. Claim 3 of the '536 Patent recites a method for providing product upgrade options to a customer:

> A computer-implemented method to provide options on products, comprising:
> a. operating a computer system to receive at least on input from a customer defining a request for an option for an upgrade for a product;
> b. operating a computer system to provide to a customer an option for a product upgrade upon occurrence of specified conditions accepted by the customer and further on condition that the customer relinquish at least one right and a company has the right to enforce said relinquishment upon occurrence of the specified conditions and to provide the upgrade;

4

      c. recording in a computer readable data store the option, the specified conditions and relinquishment terms;
      d. operating a computer system to process the information in the computer readable data store and automatically provide the upgrade to the customer when conditions on the upgrade opportunity are satisfied; and
      e. recording the provision of the upgrade in a computer readable data store.

'536 Patent, claim 3. As Magistrate Judge Fallon determined, these claims—as well as the other asserted claims of the patents-in-suit—are directed to an abstract idea. And while the focus is always on the claims, *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013), the shared specification offers little in the way of additional context: "[The invention] relates to methods and systems for customizing and optimizing a company's products and services to individual customers in [a] way that concurrently maximizes customer value satisfaction and overall business performance." '409 Patent, col. 1, ll. 22–25.[1] Even if this concept does not quite qualify as a "fundamental economic [or] conventional business practice[]," *see DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014), the court is convinced—by clear and convincing evidence—that the patents-in-suit nonetheless claim "an abstraction—an idea, having no particular concrete or tangible form." *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).

The Plaintiffs characterize the patented invention as an *idea* but not an *abstract idea*. (D.I. 68 at 3.) Specifically, the Plaintiffs note that the patents-in-suit claim subset applications of "dynamic pricing"—applications that were previously unrealized in industry. (*Id.* at 4 & n.4.) The Plaintiffs even emphasize the lack of "voluminous literature" on the subject as proof that it is not abstract. (*Id.* at 3–4.) But novelty under § 102 is a distinct inquiry, separate and apart

---

[1] To avoid repetition, the court will only cite the '409 Patent for the shared specification.

5

from the first prong of the § 101 analysis. *See Money Suite Co. v. 21st Century Ins. & Fin. Servs., Inc.*, No. 13-984-GMS, 2015 WL 436160, at *3 (D. Del. Jan. 27, 2015) (citing *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, No. 1:10cv910 (LMB/TRJ), 2014 WL 5430956, at *11 (E.D. Va. Oct. 24, 2014)). Moreover, the Federal Circuit has already squarely rejected the Plaintiffs' position that "abstract ideas remain patent-eligible under § 101 as long as they are new ideas, not previously well known, and not routine activity." *See Ultramercial*, 772 F.3d at 714–15. "[N]ew ideas may be similarly abstract and invalid under § 101," regardless of the literature available on the subject. *See Money Suite*, 2015 WL 436160, at *4.

The Plaintiffs attempt to seize upon the specific language used by the magistrate judge and Plusgrade to describe the underlying abstract idea: "the R&R's (and [Plusgrade's]) contradictory articulations of the proper formulation of the abstract idea suggests [sic] the absence of any such 'abstract' idea." (D.I. 68 at 4.) There are several problems, however, with the Plaintiffs focus on semantics. First, the court rejects the assertion that the R&R and Plusgrade present "contradictory articulations" of the abstract idea. Rather, their framing of the invention appears entirely consistent. Second, the court fails to understand how the use of slightly different words to describe something *abstract* is proof that it is not abstract. Indeed, "abstract" is defined as "relating to or involving *general ideas or qualities rather than specific people, objects, or actions." Abstract*, MERRIAM-WEBSTER: DICTIONARY AND THESAURUS, http://www.merriam-webster.com/dictionary/abstract (last visited Mar. 10, 2015). The English language is capable of conveying like ideas in different terms. Moreover, the Plaintiffs' reliance on *DDR Holdings* is misplaced. *See DDR Holdings*, 773 F.3d 1245. The Plaintiffs importantly omit the following quote from their discussion: "under any of [the defendant's] characterizations *of the abstract idea*, the [patent-in-suit] claims satisfy *Mayo/Alice* step two." *Id.* at 1257

(emphasis added). In other words, the defendant's different characterizations of the idea had no bearing on the Federal Circuit's ultimate ruling that the claims were patent eligible. The court has previously rejected the argument that uniform phrasing must be used to describe the abstract idea. *See Money Suite*, 2015 WL 436160, at *4 ("[T]he Defendants succeed in presenting a consistent, coherent argument that the [patent] is abstract."). The court does so again here. The patents-in-suit are directed to patent-ineligible abstract ideas.

### B. Inventive Concept

"[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice*, 134 S. Ct. at 2354. At step two, "we search for an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 2355. The court agrees with Magistrate Judge Fallon that the patents-in-suit fail to claim an "inventive concept" that renders the claims patent eligible.

As the magistrate judge emphasized, the specification itself confirms that the patents do not claim "significantly more" than the underlying concept: "Through [the claimed] method, a new efficient approach is introduced for managing customer relationships, sales cycles, marketing, customer service, market research and customer feedback. It eliminates manual, time-consuming processes and replaces those with an efficient, automatic process." '409 Patent, col. 25, ll. 26–30. The Plaintiffs argue that the magistrate judge took this statement out of context, but regardless of the light that the Plaintiffs cast on the written description, the court sees no error or misinterpretation in Magistrate Judge Fallon's analysis. Moreover, the claimed computer architecture—*e.g.*, data store, output device, servers, processors—is "purely functional and generic." *See Alice*, 134 S. Ct. at 2360. "[T]he mere recitation of a generic computer cannot

transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 2358. The court is unable to discern any inventive element that meaningfully limits the scope of the claims.

The Plaintiffs maintain that the claims of the patents-in-suit do not entirely preempt the use of the abstract idea. The focus on preemption goes hand-in-hand with the inventive concept requirement: they ensure that the patentee is not granted a disproportionate monopoly over the "building blocks of human ingenuity." *See id.* at 2354–55. Leaving open some avenues with which to practice the underlying idea, however, does not guarantee patent eligibility. *See Money Suite*, 2015 WL 436160, at *5 ("The availability of other possible computer-implemented methods—ones not using front-end network gateways—also does not assuage fears of blocking further innovation."). Even restricting the claims' field of use to the airline industry does not sufficiently narrow the scope to satisfy § 101. *See Bilski*, 561 U.S. at 610–11 ("[T]he prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'" (quoting *Diamond v. Diehr*, 450 U.S. 175 (1981))). The court agrees with Magistrate Judge Fallon's analysis of the preemption concerns.

The Plaintiffs attempt to analogize the patents-in-suit to those at issue in *DDR Holdings*, in which the Federal Circuit upheld patent eligibility. The court is not convinced that *DDR Holdings* is on point. Critically, there the Federal Circuit found the claims to be patent eligible because "they do not broadly and generically claim 'use of the Internet' to perform an abstract business practice (with insignificant added activity). . . . In short, the claimed solution amounts to an inventive concept for resolving this *particular Internet-centric problem*, rendering the claims patent-eligible." *DDR Holdings*, 773 F.3d at 1258–59 (emphasis added). As already stated, the Plaintiffs' patented invention covers "methods and systems for customizing and optimizing a

8

company's products and services to individual customers in [a] way that concurrently maximizes customer value satisfaction and overall business performance." '409 Patent, col. 1, ll. 22–25. This is not a problem unique or inherent to computers. Rather, the claims recite "generic computer implementation," required only by virtue of these transactions becoming increasingly computerized themselves. *See Alice*, 134 S. Ct. at 2358 ("[I]f a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility." (internal alterations and quotation marks omitted)).

The magistrate judge's decision to analyze the machine-or-transformation test apart from the two-step *Alice* inquiry may have been unnecessary, but it was not legal error. The Supreme Court in *Bilski* stated that the test remains a "useful and important clue, an investigative tool" for the court, 561 U.S at 604, although its utility has declined since *Alice* offered a more comprehensive approach to § 101. *See DDR Holdings*, 773 F.3d at 1255–56 ("[N]ot all machine implementations are created equal."). Magistrate Judge Fallon's conclusion that the patents-in-suit failed the machine-or-transformation test comports with her analysis under the two-step *Alice* framework.

The court finds that Magistrate Judge Fallon correctly determined that the patents-in-suit are invalid under § 101.

## V. CONCLUSION

For the foregoing reasons, the court adopts the magistrate judge's R&R. The court grants Plusgrade's motion for summary judgment. (D.I. 20.)

Dated: March 11, 2015

UNITED STATES DISTRICT JUDGE

9